**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: fklorczyk@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTON REED, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br>     v.<br><br>MOLINA HEALTHCARE, INC. and CR INSURANCE GROUP, LLC,<br><br>                                    Defendants. | Case No.  3:21-cv-01851-JD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT MOLINA HEALTHCARE, INC.'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date:        July 7, 2021<br>Time:       10:00 a.m.<br>Court:      Courtroom 11, 19th Floor<br><br>Hon. James Donato |

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ...................................................................................................................1

APPLICABLE LAW ..............................................................................................................3

ARGUMENT ..........................................................................................................................4

I.     PLAINTIFF STATES A CLAIM FOR RELIEF UNDER THE TCPA ................................4

     A.     Molina Is Vicariously Liable For The Calls That CR Insurance Placed ....................4

     B.     Plaintiff Adequately Pleads That Defendants Placed The Calls Using An Artificial Or Prerecorded Voice ............................................................................6

     C.     Plaintiff Adequately Pleads That Defendants' TCPA Violations Were Knowing And/Or Willful .........................................................................................7

II.     THE CLASS ALLEGATIONS SHOULD NOT BE STRICKEN .........................................7

CONCLUSION .......................................................................................................................9

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ......................................................................................................... 3, 4

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ............................................................................................................ 3

*Cruz v. Sky Chefs, Inc.*,
　2013 WL 1892337 (N.D. Cal. May 6, 2013) ...................................................................... 8

*Ewing v. Freedom Forever LLC*,
　2021 WL 1087100 (S.D. Cal. Mar. 22, 2021) ................................................................ 7, 8

*Fishman v. Tiger Nat. Gas, Inc.*,
　2018 WL 1242076 (N.D. Cal. Mar. 8, 2018) ...................................................................... 8

*Gulden v. Liberty Home Guard LLC*,
　2021 WL 689912 (D. Ariz. Feb. 23, 2021) ......................................................................... 7

*Henderson v. United Student Aid Funds, Inc.*,
　918 F.3d 1068 (9th Cir. 2019) ......................................................................................... 5, 6

*In re Wal–Mart Stores, Inc. Wage and Hour Litig.*,
　505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................................................ 8

*Keifer v. HOSOPO Corp.*,
　2018 WL 5295011 (S.D. Cal. Oct. 25, 2018) ..................................................................... 7

*Keniston v. Roberts*,
　717 F.2d 1295 (9th Cir. 1983) ............................................................................................ 9

*Kristensen v. Credit Payment Servs. Inc.*,
　879 F.3d 1010 (9th Cir. 2018) ............................................................................................ 4

*Makaron v. GE Sec. Mfg., Inc.*,
　2015 WL 3526253 (C.D. Cal. May 18, 2015) .................................................................... 8

*Mata v. Veros Credit, LLC*,
　2017 WL 2644633 (C.D. Cal. Jan. 20, 2017) ..................................................................... 6

*McLellan v. Fitbit, Inc.*,
　2018 WL 2688781 (N.D. Cal. June 5, 2018) ...................................................................... 3

*Miranda v. Coach, Inc.*,
　2015 WL 636373 (N.D. Cal. Feb. 13, 2015) ...................................................................... 8

*Moreno v. Baca*,
   2000 WL 33356835 (C.D. Cal. Oct. 13, 2000) ..................................................................8

*Moser v. Health Ins. Innovations, Inc.*,
   2018 WL 325112 (S.D. Cal. Jan. 5, 2018) .......................................................................5

*Naiman v. Freedom Forever, LLC*,
   2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) ..................................................................8

*Pacleb v. Cops Monitoring*,
   2014 WL 3101426 (C.D. Cal. July 7, 2014) ....................................................................7

*Torres v. Nat'l Enter. Sys., Inc.*,
   2012 WL 3245520 (N.D. Ill. Aug. 7, 2012) ......................................................................6

*Vaccaro v. CVS Pharmacy, Inc.*,
   2013 WL 3776927 (S.D. Cal. July 16, 2013) ...................................................................6

*Winters v. Quicken Loans Inc.*,
   2020 WL 5292002 (D. Ariz. Sept. 4, 2020) .....................................................................7

**STATUTES**

47 U.S.C. § 227 ............................................................................................................................1

47 U.S.C. § 227(c)(5) ...................................................................................................................8

**RULES**

Fed. R. Civ. P. 8(a)(2) ..................................................................................................................3

# INTRODUCTION

Between September 2020 and March 2021, Defendant CR Insurance Group, LLC ("CR Insurance") placed at least 24 unsolicited calls to Plaintiff Weston Reed ("Plaintiff"). Compl. (ECF No. 1) ¶ 14. Before connecting to a live operator, these calls each started with a recording in Spanish stating "This is a very important call to assist you with the new enrollment or renewal for your insurance. Press 1 now to be transferred to a specialist or press 2 to be eliminated." *Id.* ¶ 18. Plaintiff had no prior relationship with CR Insurance. In addition, he has been listed on the National Do Not Call Registry since November 27, 2013. *Id.* ¶ 13. Accordingly, these calls each constituted violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA").

Through his own personal investigation, Plaintiff learned that CR Insurance was making these calls on behalf of Defendant Molina Healthcare, Inc. ("Molina"). On November 19, 2020, CR Insurance called Plaintiff, who handed the phone to his Spanish-speaking roommate, and the operator offered him insurance from Molina. *Id.* ¶ 21. To find out who was behind the calls, Plaintiff's roommate provided the operator with "Plaintiff's debit card payment information . . . linked to an unused debit account." *Id.* ¶ 21. "Plaintiff provided CR Insurance with the debit card information because he knew that the company behind the calls would try to charge him." *Id.* Thereafter, Molina "attempted to charge Plaintiff's debit card three times using the information" that he had provided. *Id.* ¶ 23. CR Insurance also called Plaintiff on November 20, 2020, "asking to verify his information for the 'Molina' insurance." *Id.* ¶ 22. On its website, CR Insurance states that "proudly represents top Carriers," and specifically lists Molina. *Id.* ¶ 16. To this day, CR Insurance continues to call Plaintiff and now Molina is even sending him text messages:



While CR Insurance has filed an Answer in this case, ECF No. 23, Molina now seeks to dismiss. But Molina's arguments are without merit. First, Molina argues that it cannot be held vicariously liable for the calls that CR Insurance placed because Plaintiff does not adequately plead that CR Insurance was acting as its agent. But, in accepting the lead from CR Insurance, and charging Plaintiff's debit card, Molina knowingly accepted the benefits of CR Insurance's acts and thus ratified its behavior. The fact that Molina charged Plaintiff's debit card was an objectively or

externally observable indication that it was exercising a choice and consented to CR Insurance's conduct. That is sufficient at the pleadings stage.

Next, Molina argues that Plaintiff does not plead the use of an artificial or prerecorded voice. But Plaintiff expressly alleges the use of an artificial or prerecorded voice and even quotes a translation of the recording.

Defendant then argues that Plaintiff does not sufficiently allege that Defendants' violations were knowing and/or willful. But it is hard to read the allegations any other way. Plaintiff had no prior relationship with CR Insurance or Molina. He never consented to the calls. He was also on that National Do-Not-Call list and even asked not to receive more calls. Despite all this, CR Insurance continued to call him.

Finally, Molina argues that the class allegations should be stricken as overbroad. But this argument is premature at the pleadings stage. There is also no evidence in the record that Defendants placed any of the calls either with consent or without an artificial or prerecorded voice. And the case law is clear that there is private right of action for violations of the National Do-Not-Call List.

For all of these reasons, and those set out below, Molina's motion to dismiss should be denied in full.

## APPLICABLE LAW

The standards governing the motion to dismiss under Rule 12(b)(6) are well-established. *See McLellan v. Fitbit, Inc.*, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that rule, and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This calls for "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility analysis is "context-

specific" and not only invites but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## ARGUMENT

I. **PLAINTIFF STATES A CLAIM FOR RELIEF UNDER THE TCPA**

    A. **Molina Is Vicariously Liable For The Calls That CR Insurance Placed**

Molina argues that Plaintiff does not allege sufficient facts to hold it vicariously liable for the calls placed by CR Insurance. MTD at 5. That is incorrect. Molina is vicariously liable under theories of both actual authority and ratification.

The Ninth Circuit has adopted the Federal Communications Commission (FCC) construction of the TCPA that holds "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call," and actions under the TCPA "incorporate federal common law agency principles of vicarious liability." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (alteration in original) (internal quotations and citations omitted). The Ninth Circuit "relies on the Restatement (Third) of Agency as the federal common law of agency" for these actions. *Id.*

Another means by which a principal can become liable for acts taken by an agent is via ratification.

> "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement § 4.01. Ratification is both an act and a set of effects. Restatement § 4.01 cmt. b. As an act, ratification is the principal's assent (or conduct that justifies a reasonable assumption of assent) to be bound by the prior action of another person or entity. Restatement § 4.01. As a set of effects, ratification creates consequences of actual authority, including, in some circumstances, creating an agency relationship when none existed before. Restatement § 4.01 cmt. b.
>
> There are two ways to ratify a third party's acts. The first is by a "knowing acceptance of the benefit." To prove this form of ratification, there must be "an objectively or externally observable indication ... that the principal has exercised choice and has consented" to the acts of the purported agent. Restatement § 4.01 cmt. d. That means that the principal must have "knowledge of

> material facts," also described as "actual knowledge." Restatement § 4.06. The second way a principal can ratify the acts of a third party is through "willful ignorance." Under the "willful ignorance" theory, the principal may not know the material facts, but has "ratified with awareness that such knowledge was lacking." Restatement § 4.01 *1074 cmt. b. In effect, the principal can ratify the act of a third party—thereby making the third party the principal's agent—even if it does not know all the material facts, but it must be aware that it does not know the material facts and ratify anyway.

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073–74 (9th Cir. 2019), as amended on denial of reh'g and reh'g en banc (May 6, 2019).

      Here, Plaintiff alleges that during a call from CR Insurance, Plaintiff provided "debit card payment information. The card linked to an unused debit account. Plaintiff provided CR Insurance with the debit card information because he knew that the company behind the calls would try to charge him." Compl. ¶ 21. "On November 20, 2020, Plaintiff received another call from Defendant CR Insurance, asking to verify his information for the 'Molina' insurance." *Id.* ¶ 22. Further, Plaintiff alleges that from "December 2020 to January 2021, Defendant Molina Healthcare attempted to charge Plaintiff's debit card three times using the information Plaintiff provided Defendant CR Insurance on November 19, 2020." *Id.* ¶ 23. Molina Healthcare's conduct of attempting to charge Plaintiff's debit card after the calls from CR Insurance is "an objectively or externally observable indication" that Molina exercised choice and consented to the acts of CR Insurance. *See, e.g.*, *Moser v. Health Ins. Innovations, Inc.,* 2018 WL 325112, at *6–7 (S.D. Cal. Jan. 5, 2018) ("'Moser alleged that he received eighty-two calls from Helping Hand and Nationwide that violated the TCPA …. Moser alleges that the Calls were attempts to sell HII's bundle of insurance-related services. … Moser alleges that, when he 'faked buying a policy' during a Call from Helping Hands, he 'was told to verify the purchase with someone from HII during the sales call itself and received welcome emails and coverage documents from HII thereafter.' … Moser alleges that 'he was transferred to someone with HII' during a Call that he received from Nationwide and that he received a welcome email from HII following that Call. …. Moser has alleged facts, that, when accepted as true, make it plausible that Nationwide and Helping

Hand were acting as HII's agents when they made the Calls.  HII's motion to dismiss is denied."); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019), as amended on denial of reh'g and reh'g en banc (May 6, 2019) ("Here, there is evidence that USA Funds communicated consent to the debt collectors through acquiescence in their calling practices that allegedly violated the TCPA.  In other words, a reasonable jury could find that USA Funds ratified the debt collectors' calling practices by remaining silent and continuing to accept the benefits of the collectors' tortious conduct despite knowing what the collectors were doing or, at the very least, knowing of facts that would have led a reasonable person to investigate further.").

> **B.     Plaintiff Adequately Pleads That Defendants Placed The Calls Using An Artificial Or Prerecorded Voice**

Molina argues that "Plaintiff has failed to plead plausible facts with regard to the use of an artificial or prerecorded voice in support of his TCPA claims." MTD at 9.  That is wrong.  Plaintiff alleges that Defendants called him at least 24 times "an artificial or prerecorded voice." Compl. ¶ 1.  Specifically, Plaintiff alleges that each time he answered a call from Defendants, there were "initial pre-recorded messages" in Spanish that translate to: "This is a very important call to assist you with the new enrollment or renewal for your insurance. Press 1 now to be transferred to a specialist or press 2 to be eliminated." *Id.* ¶ 18.  Nothing about these allegations are implausible and, in fact, they can be easily proven with recordings of the calls. *Mata v. Veros Credit, LLC*, 2017 WL 2644633, at *4 (C.D. Cal. Jan. 20, 2017) (bare assertion that Defendant used an artificial or prerecorded voice was sufficient); *Vaccaro v. CVS Pharmacy, Inc.*, 2013 WL 3776927, at *2 (S.D. Cal. July 16, 2013) (same); *Torres v. Nat'l Enter. Sys., Inc.*, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (pleading that an artificial or prerecorded voice was used by the defendant is sufficient at the pleading stage because "it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used").[1]

---

[1] Plaintiff is no longer pursuing a theory based on the use of an ATDS.

### C. Plaintiff Adequately Pleads That Defendants' TCPA Violations Were Knowing And/Or Willful

Molina argues that the Court should dismiss Plaintiff's claim that it violated the TCPA knowingly and/or willfully because those allegations are conclusory. MTD at 10. That is incorrect. Plaintiff alleges that he never provided Defendants with consent to call him and that, "[o]n November 18, 2020, [he] received a call from Defendants and requested that his number be removed." Compl. ¶¶ 1, 19. Plaintiff also alleges that he never provided Defendants with consent to call him. *Id.* ¶ 1. In fact, Plaintiff has been registered on the National Do Not Call Registry since 2013. *Id.* ¶ 13. Given these allegations, Defendants knew that Plaintiff did not consent to receive the calls but continued to call him anyway. Accordingly, he pleads the Defendants violated the TCPA knowingly and/or willfully. *See, e.g.*, *Winters v. Quicken Loans Inc.*, 2020 WL 5292002, at *5 (D. Ariz. Sept. 4, 2020) (Plaintiff adequately pled a knowing or willful violation of the TCPA because he alleged that that, on at least one occasion, he "answered the telephone and told Defendant to stop calling him."); *Pacleb v. Cops Monitoring*, 2014 WL 3101426, at *4 (C.D. Cal. July 7, 2014) ("[D]efendant argues that the FAC does not adequately allege that defendant acted knowingly and/or willfully in violating the TCPA. This argument fails because the FAC alleges that defendant's conduct constituted 'multiple knowing and/or willful violations of the TCPA,' see FAC ¶ 58, and the Court takes this allegation as true for the purposes of the present motion."); *Keifer v. HOSOPO Corp.*, 2018 WL 5295011, at *5 (S.D. Cal. Oct. 25, 2018) (finding sufficient for purposes of motion to dismiss allegation that " 'the foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA' " (citation omitted)); *Gulden v. Liberty Home Guard LLC*, 2021 WL 689912, at *6-7 (D. Ariz. Feb. 23, 2021) (same); *Ewing v. Freedom Forever LLC*, 2021 WL 1087100, at *6 (S.D. Cal. Mar. 22, 2021) (same).

## II. THE CLASS ALLEGATIONS SHOULD NOT BE STRICKEN

Molina argues that Plaintiff's proposed Robocall Class should be stricken because the class definitions in the Complaint are not pegged to the use of an artificial prerecorded voice or the lack of consent. MTD at 12. Accordingly, Molina argues, these classes necessarily include "persons

who received calls in compliance with the TCPA—and thus who suffered no conceivable injury . . . ." *Id.* But this argument assumes facts that are not currently in the record. There is no reason to believe that Defendants ever called anyone *without* an artificial or prerecorded voice. Nor is there any reason to believe that Defendants ever had consent to call anyone. Perhaps discovery will shed light on this issue, but Molina's argument is premature at this juncture. *Miranda v. Coach, Inc.*, 2015 WL 636373, at *3 (N.D. Cal. Feb. 13, 2015) (defendant's argument about the viability of class treatment "might be true, or it might not . . . [b]ut as many cases have concluded, it is far too premature to resolve the question at this early stage.") (Donato, J.); *Cruz v. Sky Chefs, Inc.*, 2013 WL 1892337, at *5 (N.D. Cal. May 6, 2013) ("[M]any courts have recognized that the sufficiency of class allegations are better addressed through a class certification motion, after the parties have had an opportunity to conduct some discovery."); *In re Wal–Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 614-16 (N.D. Cal. 2007) ("the granting of motions to dismiss class allegations before discovery has commenced is rare"); *Moreno v. Baca*, 2000 WL 33356835, at *2 (C.D. Cal. Oct. 13, 2000) (defendants' motion to strike class allegations was premature because no motion for class certification had been filed).

Without a single citation, Molina also argues that the NDNC Class should be stricken because there is no private right of action for violations of the National Do-Not-Call List. MTD at 12. That is wrong. Courts regularly hold that the TCPA creates a private right of action for infractions of the National Do-Not-Call List. *See, e.g.*, *Fishman v. Tiger Nat. Gas, Inc.*, 2018 WL 1242076, at *3 (N.D. Cal. Mar. 8, 2018) ("The TCPA establishes a claim for relief for any user who receives 'more than one telephone call within any 12-month period by or on behalf of the same entity' at a number on the Do-Not-Call list.") (citing 47 U.S.C. § 227(c)(5)); *Makaron v. GE Sec. Mfg., Inc.*, 2015 WL 3526253, at *5 (C.D. Cal. May 18, 2015) (referring to "[t]he language of section 227(c)(5), which provides for a private right of action for do-not-call violations"); *Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019) ("Section 227(c)(5) establishes a private right of action for individuals on the Registry who receive 'more than one telephone call within any 12-month period by or on behalf of the same entity.' ").

## CONCLUSION

For the foregoing reasons, Molina's motion to dismiss should be denied. Alternatively, if the motion is granted in any respect, Plaintiff should be given leave to amend. *See, e.g., Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) ("Ordinarily, leave to amend should be freely given in the absence of prejudice to the opposing party.").

Dated: June 11, 2021                                **BURSOR & FISHER, P.A.**

By:   */s/ Frederick J. Klorczyk III*
         Frederick J. Klorczyk III

Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: fklorczyk@bursor.com

*Attorneys for Plaintiff*